**CITY OF NEWPORT BEACH,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

**Continental Airlines, Inc., Pacific Southwest Airlines, Intervenors.**

**AIR CALIFORNIA, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

**Continental Airlines, Inc., Pacific Southwest Airlines, Intervenors.**

Nos. 80–2038, 80–2053.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 3, 1981.

Decided Sept. 21, 1981.

Norton Cutler, Detroit, Mich., with whom Howard E. O'Leary, Jr., Detroit, Mich., and Hugh R. Coffin, Newport Beach, Cal., were on the brief for petitioner, City of Newport Beach, in 80–2038.

Robert Barnett, John W. Simpson and David L. Vaughan, Washington, D.C., were on the brief for petitioner, Air California, in 80–2053.

Alan R. Demby, Atty., Civil Aeronautics Bd., Washington, D.C., with whom Sanford Litvack, Asst. Atty. Gen., Michael Schopf, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, J. Thomas Ezeel, Atty., Civil Aeronautics Bd., John J. Powers, III, and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., were on the brief for respondent. Daniel J. Conway, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for respondent.

Lee M. Hydeman and Thomas W. McLaughlin, Washington, D.C., entered appearances for intervenor, Continental Airlines, Inc., in 80–2038 and 80–2053.

Richard D. Mathias and R. Bruce Keiner, Jr., Washington, D.C., entered appearances for intervenor, Pacific Southwest Airlines, in 80–2038 and 80–2053.

Before MacKINNON, MIKVA and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

*See FTC v. Anderson,* 442 F.Supp. 1118, 1122–24 (D.D.C.1977), *aff'd in part and remanded in part,* 203 U.S.App.D.C. 159, 631 F.2d 741 (1979).

PER CURIAM.

In March 1979 the Civil Aeronautics Board made a final grant of authority to Continental Airlines, Inc. (Continental) to expand its service at John Wayne Airport * in Orange County, California. A petition for reconsideration sought to have the Board rescind and defer an award of new authority until the Board completed an assessment of environmental consequences. The Board's denial of that petition is challenged here as arbitrary and capricious. We affirm the agency.

## I. BACKGROUND

This proceeding arose out of a Board program to realign the route authority of the nation's air carriers to promote efficient service by carriers already eligible to serve particular markets. Air Carriers have been hampered in serving many cities because of prohibitions against nonstop service between those cities and others the carriers are authorized to serve. Continental is but one of several air carriers to have its entire certified authority, which had been granted piecemeal, recognized to eliminate conflicting, useless and outmoded limitations in order to increase operating efficiency.

In an application dated September 30, 1976, Continental Air Lines asked the Board to issue an order directing all interested persons to show cause why a certificate of public convenience and necessity previously issued to Continental should not be amended to modify or remove certain restrictions contained in it. The requested order would have proposed extensive realignment of Continental's domestic route system, including new authority to fly nonstop between Orange County and the cities of Austin, Chicago, Colorado Springs, Denver, El Paso,

Houston, Kansas City, Lawton, Fort Sill, and San Antonio.[1] The proposed removal of impediments to nonstop service was based primarily on the irrationality of the restrictions and not on the need or economic feasibility of such service. Removal of a government-imposed barrier to nonstop service does not necessarily make that service profitable, and an airline may still need, for economic reasons, to serve a market only with one-stop or multi-stop flights. The practical impact of Continental's realignment insofar as air traffic at the Orange County Airport was concerned was restricted by the fact that Orange County authorities limited the number of jet aircraft departures at the airport to 41 daily.[2]

Several parties filed objections to Continental's proposal, including Air California, the predominant air carrier operating at John Wayne Airport. The basis of Air California's objection was the competitive implications that the Continental proposal had for incumbent carriers. The requested show cause order was nevertheless issued in July 1978.[3] A summary of the route authority realignment proposed in the order was published in the Federal Register. 43 Fed.Reg. 33778 (1978). The Board received and considered several objections filed by interested airlines and cities, and in March 1979 issued an order that basically adopted as proposed the realignment described in the July 1978 order.[4] No party had raised environmental objections to the July 1978 order, and the March 1979 order made final the tentative finding that the proposed certificate amendment "will not constitute a major Federal action significantly affecting the quality of the environment within the meaning of section 102(2)(C) of the National Environmental Policy Act of 1969."[5]

---

* During the course of these proceedings the Orange County Airport was named John Wayne Airport. For the sake of clarity and convenience we refer to the airport throughout this opinion by its present name.

1. *See* Order to Show Cause, No. 29857 (Order 78–7–91, July 21, 1978), Joint Appendix (JA) 23, 31.

2. CAB brief at 4 n.2, 10–11.

3. *Id.*, JA 23–83.

4. Order Amending Certificate, No. 29857 (Order 79–3–4, March 1, 1979), JA 84–86.

5. Order to Show Cause, *supra* note 1, JA 24, 25, referred to in Order Amending Certificate, *supra* note 4, JA 84, 86.
   The statutory provision referred to requires that federal agencies prepare a detailed statement on the environmental impact of and

The Board thus concluded it was not legally bound to prepare an environmental impact statement (EIS) in conjunction with the grant of new route authority at the Orange County Airport.[6] We see no basis for faulting this finding by the Board as to the magnitude of its actions at the time it was made.

Petitions that the Board reconsider its March 1979 order were filed by the County of Orange and by Air California. Neither party had responded to the Board's show cause order. Orange County claimed it had not received actual notice. Air California explained that its present attorneys were not representing it at the time of the July 1978 show cause order, and that it had "missed the fact that Continental and the show cause order were proposing vast new authority at the Orange County Airport."[7] Orange County requested that the final approval of Continental's realigned route authority be rescinded and deferred until Orange County had a chance to respond. Air California urged further that final approval of Continental's new nonstop authority be rescinded and deferred until the Board completed an assessment of "the overall and cumulative [environmental] impact of all pending and proposed services at Orange County."[8] Air California noted that an environmental assessment was already underway in connection with two other proceedings involving expansion of route authority at John Wayne Airport—*California-Nevada Low Fare Route Proceeding* (No. 31574) and *California-Arizona Low Fare Route Proceeding* (No. 33237).

Air California acknowledged that it was unlikely that Continental would serve Orange County in the near future, because of the lack of terminal space and the existence of flight restrictions imposed by airport authorities.[9] Air California was nevertheless fearful, however, that additional authorization "would exacerbate the environmental problems and arouse the ire of the articulate and forceful citizens in the area,"[10] creating more community relations problems for Air California. In addition, of course, added authority for Continental meant more potential competition for the limited number of flights authorized by airport officials.

The environmental assessment to which Air California referred was being prepared by the Board's Bureau of Pricing and Domestic Aviation (BPDA). The Bureau, in the *California-Nevada* and *California-Arizona* proceedings, had announced that it would be filing an "environmental negative declaration," which would explain why no further analysis of environmental consequences would be needed.[11] Shortly after the issuance of the Board's March 1979 order expanding Continental's route authority, however, the Bureau announced a reversal of its position:

·We believe it advisable . . . to conduct a more thorough and general analysis of the situation at [John Wayne Airport].

. . . . .

There are several reasons for the change in our announced position. Since the Orange County markets have been severed from the remaining city-pairs in this proceeding, further consideration of the problems at [John Wayne Airport] will not delay the initiation of service of

---

alternatives to any proposed "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

6. "[A]n impact statement should not be required where the impact will be minor or unimportant, or where 'there is no sensible reason for making one' . . . ." *Hanly v. Kleindienst*, 471 F.2d 823, 831 (2d Cir. 1972), *cert. denied*, 409 U.S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256.

7. Petition of Air California for Reconsideration of Order 79–3–4 at 2, PA 100.

8. *Id.* at 4, JA 102.

9. *Id.* We are informed that Orange County, as airport proprietor, limits the number of daily departures, the operating hours, and the weight of jet aircraft. There is also a prohibition of flights to destinations more than 500 miles distant.

10. *Id.* at 7, JA 105.

11. See Letter from Bureau counsel to Administrative Law Judge (March 14, 1979), JA 106.

the other markets for which awards may be made. Recent FAA regulations on take-off procedures have intensified the already serious noise problem. Furthermore, since the Bureau is now having to deal with a number of applications for Orange County service where the same environmental issues arise, we want to settle these issues now to the extent possible.

Once this comprehensive analysis is completed, we will decide whether or not an EIS is necessary. If it is not, we will issue an environmental negative declaration, accompanied by an environmental assessment containing the results of our study.[12]

The Board approved of this course of action on April 12, 1979 in a decision in the *California-Nevada* proceeding, which involved the applications of twelve air carriers to serve one or more of 26 markets. Several of these applications involved service at John Wayne Airport. The Board noted that the County of Orange and the City of Newport Beach had

urged that awards of authority to Orange County be deferred until an environmental impact statement is prepared or that special conditions be attached to any award of authority.

BPDA is now conducting a thorough analysis of the situations at Orange County Airport .... We are severing consideration of applications to serve Orange County from the other issues in this case. After further consideration we will determine if preparation of an environmental impact statement should be required prior to the award of any new authority at Orange County.[13]

The BPDA study was issued the next month, May 1979. Although not determining that awards of new route authority at John Wayne Airport would constitute major federal action triggering an EIS requirement, the Bureau concluded it would be prudent to prepare a statement on the environmental impact of allowing additional operations at the airport.[14]

With these developments in the background, the Board, on August 7, 1980, denied the Orange County and Air California petitions for reconsideration of its March 1979 grant of new operating authority to Continental. The Board explained that "the decision to grant Continental improved Orange County authority was made well before any of these [environmental] concerns had surfaced ... and, consequently, we will not use these concerns as the basis for a withdrawal of this authority here." [15] The Board also rejected the contentions of petitioners that they were not properly notified of the Board's intention to realign Continental's route authority.

From this Order Air California and the City of Newport Beach petition for review.[16]

On November 29, 1980, the Bureau issued a draft EIS for John Wayne Airport suggesting, among other options, that operating authority should not be withheld on environmental grounds.[17] After receiving and considering written comments and holding a public meeting, the Board adopted, on July 8, 1981, a final EIS. This 200 page document assesses the possible environmental impact of four alternative actions by the Board regarding applications by air carriers for authority to operate at John Wayne Airport. It studies effects on noise levels, air quality, water quality, air-

---

12. *Id.* JA 107–08.

13. *California-Nevada Low Fare Route Proceeding,* No. 31574 (Order 79–4–85, April 18, 1979), JA 115, 121–22.

14. Consolidated Proceedings, Nos. 31574, 33237, etc., Environmental Assessment and Announcement of the Preparation of an Environmental Impact Statement, JA 160–98.

15. Order Denying Petitions for Reconsideration, No. 29857 (Order 80–8–33, August 7, 1980), JA 202, 203.

16. The Federal Aviation Act provides for judicial review of Board orders upon timely petition "by any person disclosing a substantial interest in such order." 49 U.S.C. § 1486.

17. JA 205–10.

side and landside congestion, energy use, and wildlife. It addresses comments raised by the public, ranks alternatives according to environmental impact, and identifies the Board's preferred alternative—a policy of "open entry," which would involve granting all applications without restrictions.

## II. DISCUSSION

The petitioners' basic argument is that it was arbitrary and capricious for the Board not to rescind its approval of enhanced route authority for Continental once it became clear that other pending applications for enhanced authority at John Wayne Airport should be deferred pending an environmental assessment. In support of this argument the petitioners make a series of contentions: (1) the Board's refusal to rescind the Continental realignment order was based on the erroneous factual premise that environmental problems at John Wayne Airport had not "surfaced" before the Board made its decision to grant the route realignment; (2) the Board in any event erred in failing to raise and consider environmental problems sua sponte; (3) the Board has abused its discretion by failing to complete the EIS promptly; (4) the Board's failure to defer Continental's application for improved route authority was inadvertent and the Board was arbitrary in failing to correct it; and (5) the Board's refusal to correct its failure to serve Orange County with a copy of the show cause order was arbitrary.

All of these contentions, in one way or another, raise the issue of whether the Board erred in granting new authority to Continental before preparing and considering a statement of the environmental impacts that such a grant would have. Counsel for the Board suggested in its brief that this issue would become moot if the policy alternative adopted in the Board's final EIS were to be a policy of unrestricted entry. The Board has now filed a substantial EIS that concludes open entry is the preferred alternative, environmental factors considered. Even if we were to accept petitioners' argument on the merits—that the

grant of authority to Continental should have been deferred pending the filing of a final EIS—it would now be futile to direct the Board to reconsider its grant to Continental given the existence of a final EIS that supports, if it does not mandate, such a grant. The filing of an EIS recommending unrestricted entry renders meaningless any relief which we might award to the petitioners. Thus, while not foreclosing any challenge petitioners might bring to the adequacy of the EIS, we deny the petitions for review as moot. *See, e. g., Romero-Barcelo v. Brown,* 643 F.2d 835, 862 (1st Cir. 1981).

*Judgment accordingly.*